Will the clerk please call the next case. 1-250-619-WC Daniel Rodriguez, Appellant by Elizabeth Kent v. Illinois Workers' Compensation Comm'n et al., Ford Motor Company, Appley by Brian Reiderman. Counsel Kent, you may proceed. Thank you. May it please the court, My name is Elizabeth Kent and I do represent the petitioner in this case, Daniel Rodriguez. The question before this court today is, well there are two. My first question is, can a commission decision ever stand and be upheld where the premise for its basis for its decision is based upon false factual findings? Here in this case, the sole basis for the commission's decision is that the cement walkway had tiger striping and guardrails and therefore it was the designated walkway. But your honors, we know this isn't true. We know this isn't true because all of the photos that I also attend that I attached to your appendix. Ms. Kent, does it matter that it didn't have guardrails or tiger striping? I mean, it was a cement walkway. Yes, Judge, because the commission's whole basis is that it was the designated walkway because of these. That means if there were guardrails, there was a barrier to the gravel walkway and there wasn't. There was nothing to discern or there was nothing between the gravel walkway and the cement walkway that made one less accessible than the other. They were both easily accessible and not only that, the evidence showed that hundreds of Ford employees used the gravel walkway as the preferred route to the parking lot. Well, counsel, don't you have testimony that the employer only maintained the concrete walkway and not the other walkway? Isn't there testimony to that effect? From Ford's witness, correct. However, from my witness, Daniel Rodriguez, he testified that the gravel walkway was periodically cleaned up. We entered a photo. Could he tell us who cleaned it up? I don't believe I asked him that question. We do know that Ford admitted that the landscape company Redbud who worked for them was in charge of maintenance of all the area. Rodriguez also testified. Has it been significant, Ms. Kent, that Ford presumably wants to keep its grounds clean and so they hire somebody to do that? Is it significant that they may have picked up any garbage or debris on this other walkway that you're talking about? I think so because it goes to maintenance. Also, there were flagstones at the end of the gravel walkway that it abutted the parking lot, that's in the photos as well, to show that someone made it easier for that gravel walkway to adjust to the parking lot. I mean, I suppose multiple inferences can be drawn about who made it easier. It could be that Ford did, or it could be that those who used that alternative path noticed some flagstones and threw them down and exercised and engaged in self-help. That is true, but I think it's more likely that the flagstones came from someone like Redbud who was under the auspices of Ford. I would say also this, that again, we have video cameras from three different areas that show that there are no markings between the two, that the cement walkway had nothing to show that it was the designated way or any barriers that prevented the employees from customarily using the gravel walkway. And the video evidence is not only dispositive of that fact, it's dispositive of the fact that Ford knew. Ford knew the walkway was used, and in the minute and a half of the video, seven employees, if you take the aggregate of the three videos, in the minute and a half, seven Ford employees used the gravel walkway and less used the cement walkway. And if you times that by an hour, 280 employees. And does that foot traffic seem enormous? No, because Ford witness NAC testified that this gravel walkway, which is five feet wide and at least 100 feet long, was created by foot traffic. For that to be the case, foot traffic had to be enormous, gargantuan, and regular and customary. There's no doubt about it. You know, this is more than acquiescence. Acquiescence, there's some case law suggests that's not enough, but your argument necessarily must be that Ford more than acquiesced. Is that right? And if so, explain why. Okay. I think there's Ford and there's acquiescence, right? And we have acquiescence because Ford, again, said that they monitored the area for unauthorized activity. They said that on cross-examination, but clearly they didn't deem that unauthorized or they would have prohibited it. So why I would say this, knowledge and acquiescence in it of itself may not be enough because that's not what the line of Supreme Court cases say, starting with Payne in 1920, or I'm sorry, Sunnyside, then Payne, working its way up through Union, Eagle, Scheffler, the rest, to Archer Daniels, and then finally to Orsini. What the cases hold, and it's a broad holding over many disciplines, whether it's lunch break, recreation, what they held is if there is a customary activity that the employees engage in on a regular basis, which we have here, and the employer knows about it and acquiesces to it, and or acquiesces to it, because you don't need both. Here we have both. The employer will be liable if there is a defect on the premises, and that's the other element. There are about four things. You have to have a customary and regular. Employer has to know. There has to be a risk of harm to the premises, and that's what we have here. I think that's what the true beauty of Orsini is that, and when you just... I understood you, counsel, to say risk to the premises. Yeah, I'm sorry. I might have misspoke. Yes, if there is a risk inherent to the premise, to the property, so what the Supreme Court cases hold that a type of employment risk is a risk inherent to the premise, to the premises, okay? And so here we have... Please create a risk. A risk, and it's an employment risk, and that's just a well-settled principle that if there's a defect on the property that comes under employment risk. But we have to have all the elements, and that's why Orsini is perfect. Even though it doesn't decide for the petitioner, I love that case because at the top or the umbrella of it, you have employer knowledge. Employer knows and or there's acquiescence. That's at the top. Then underneath you have two parts. The first is like Orsini or Mazursky or Fisher Boddy. In those cases, like Orsini, he's working on his car when the car rolls over him. Mazursky, fixing his tire of his own car when he's injured on the employer's property. Fisher Boddy, battery explodes while he's trying to fix his battery on the employer's property. None of those cases, employer was found liable. Why? Because as Orsini put it, which is perfect, this could have occurred anywhere at any time. So even though the employer knew in acquiescence maybe to those activities, the act itself could have occurred anywhere, anytime. Here or under the other side of the umbrella of Orsini, there's a whole list of cases where the employer is liable because it couldn't happen anywhere at any time. Could Rodriguez? No. It is rooted in the defect on the property. That's the difference. So under Orsini, you have employer knowledge and acquiescence in cases like it, Fisher and Mazursky. Then the Orsini court is very, very clear. The Orsini court states in the instant case, the risk of harm to Orsini was not increased by any condition of the employment premises. Unlike situations presented in Scheffler and Union starch, where the harm to the employee came about as a result in the defect in the employer's premises. So that's the difference. And that's the key here. So yes, acquiescence isn't enough. It's a factor. You need custom and regular activity. And the injury has to be caused by something on the premises, not in Orsini's case, where it could have happened anywhere at any time. And I think that's an excellent way. What was the defect here? Rodriguez tripped and fell over a rock on the gravel walkway. Did that happen to anybody at any time? It was specific to the risk of the property. Because otherwise, it is not an act unto itself. It is a defect in the property that caused the injury. So no, it could not happen anywhere at any time. It was specific to his employment. Is it an unusual rock found nowhere else? I understand. But that would almost, I understand what you're saying. But that would almost be like in Union starch, where the employee went on the roof and fell through. That could happen anywhere. But really, it's a defect that was caused by the premises at the company. So that's the distinction. Anywhere, anytime means that Orsini could have been fixing his car anywhere when the pin rolled out from him. And in Fisher Body, he was literally trying to jump a battery and it exploded. That had nothing to do with the premises or the property of the employer. Here, it had to do with the property of the employer. Well, Council, you just mentioned something to the effect that the defect, the rock, was a specific defect to his employment. The issue I have there is you've got your client taking this route for a personal convenience, there's a perfectly good maintained walkway he doesn't use, and we know that you cannot convert a personal risk into an employment risk where there's this deviation. So it seems to run against the act that we have this perfectly good walkway. You deviate for your own convenience and you go and find that rock. It just doesn't seem to jive with the act. I would say this then. I'm so sorry. I don't even know why that's on. I thought I turned it off. I think then under that, you could say that, like in Scheffler, which was another Supreme Court case, playing Frisbee should not be allowed because that's not part of the employment. Or in Archer Daniels, which is perfectly aligned with this case, the employees used a gate that was not labeled for their use. It was labeled for suppliers and contractors. And the entire thing was covered with ice. And the Archer Daniels court, but 200 employees used that gate entry anyway. Why? It was closest to the plant. Further away from the plant, about 50 feet away, was a gate designated for the employees. But they didn't use that. They used the one where there was a long crossing arm across the top of it. There was a 2.5 foot wide opening and they traversed it 200 times daily. Here in this case, though, the deviation you are taking, a person, a worker is taking a slightly more dangerous route by going down this hill with debris and flagstones and things of that nature, as opposed to walking down the maintained concrete pathway. Yes, you're right. But that is the risk to the premises. And under the law, even if, like union search, even if the act is unreasonable and unusual, there will be liability to the employer if the employer knows and allows it. Is that why you're saying ADM is on all points with your case? I'm sorry, your honor. Could you say that again? ADM. I don't know if you finished up with ADM. Why is it dispositive? Why is it this case that we're being presented now on review? I apologize. I don't know what ADM is. Well, what was the case of the gate for contractors only? Sure. Archer Daniels. So, yes. Yeah, that's ADM to farmers. Oh, okay. Very good. I learned something new. Clearly, I did not grow up on a farm. But I'd like to learn that. I have relatives who did. Well, Justice Holdred, it's also ADM to antitrust lawyers. Another area I don't know about. Your honor, the point of Archer Daniels, it was nearly an identical fact pattern here. Gate 4 was the closest to the parking lot. It was labeled for other people's use other than employees. Employees used it anyway. The person who got hurt fell and broke her ankle when she was inside the crossing arm. It's unsure whether she ducked or not or went around, but she was standing when she fell and she broke her ankle. Subsequently, she died because of a blood clot. But there was another gate for pedestrian employee use that people didn't use because it was further away, just like here. If you look at the photos, the aerial photos, you'll see that the gravel walkway goes more directly to the cars than the cement walkway. So same thing. And the court was very specific. And here it goes with the idea of permission or allowance or acquiescence. The court said, however, the record does not indicate that the employer ever instructed its employees not to use this gate. And they put that in the set of facts in the beginning as a basis for their holding. OK, so the employer never prevented it, never instructed them not to do it. And the court, the Supreme Court, concluded that this was the anticipated normal use of the parking lot. And Erichard Daniels found liability. It was a customary. Counsel, your time is up, but you will have time in reply. But before we go to Applee, any questions from the court? Further questions for counsel? No. OK, thank you. You will have time in reply, counsel. Mr. Raderman, you may respond. Good morning, Your Honors. Brian Raderman on behalf of the Applee Ford Motor Company, and may it please this court. Your Honors, when you boil this case down to its essence, I believe you're left with one singular truth. Daniel Rodriguez was exposed to a risk of harm by a choice that he made to take the dirt and gravel path to reach his car because it was more direct and therefore more convenient for him than the cement sidewalk which was provided by Ford. Opposing counsel says that's the same thing in ADM. And ADM had recovery. Your Honor, I think Rodriguez argue that or point to the facts of ADM that the claimant was injured when she was standing erect. That means whether she ducked under the crossing arm or she went around it, she had then entered the facility of ADM, whether it was a sidewalk or a parking lot, and encountered a risk there. For this case to be factually similar, Rodriguez would have had left or finished his travel across the gravel path and reached the parking lot where he encountered a risk which caused him to fall. I think that's why it's distinguishable and why there is no precedent to be controlling over the facts of this case. What I do think is the precedent which controls is Dodson. This court decided in 1999 that when an injury does not, an injury does not arise out of the employment where an employee voluntarily exposes himself or herself to an unnecessary personal danger solely for his own convenience. Every word of that holding matters. And I think when you apply to the facts of this case to that holding, you can see how it controls. Rodriguez testified that he was clocked out at the end of the day for his shift when he was walking to his car. He testified that he parked, that the route he chose on any given day, whether it was the gravel pathway or the cement sidewalk, was controlled by where he parked his car in the parking lot. He testified that on January 8th of 2020, he chose to use the gravel pathway because it was the most direct route to his car where he had parked that morning. He testified, and the video evidence shows, that the cement-wide sidewalk which connects Torrance Avenue Bridge directly to the parking lot had no snow or ice upon it. He testified that it did, that it had no obstructions or barriers which prevented his use of the sidewalk, and he never testified that there was routinely or a pattern or history of obstructions on the cement sidewalk. Steve Knacht, the safety manager of nearly 28 years for Ford, testified that in 2014 and 2015, the cement sidewalk was designed, constructed, and maintained for the safe ingress and egress of Ford employees. And therefore, I think you're left with the unavoidable conclusion that Daniel Rodriguez voluntarily exposed himself to the risk of the gravel path, which was an unnecessary personal danger because of the makeup of these paths, the gravel versus the cement, and he did so solely for his own convenience. And therefore, we believe his injuries do not arise out of his employment. It's the same conclusion that the commission reached, which is a question of fact, and we're asking for its permits. But Dodson doesn't exist on its own, your honors. It starts with Orsini, which is something that's been discussed a lot here, but Orsini then leads into Hatfill. Dodson follows Orsini and Hatfill, then Purcell in 2021 follows Dodson and Orsini. We believe this case falls within that line of precedent. And because of this still good and long line of case law, all the other facts and all the other arguments that I think you've read and heard today really are not applicable to the ultimate outcome. The fact that there may have been acquiescence or knowledge of Ford that this gravel path was being used certainly can apply to in the course of. That's what Scheffler Greenhouse says. That is what Union Starch says. That is what Eagle Discount Market, that's the Frisbee case. That's what it says. But I do not believe that there's been any case law cited, and I would challenge that there is any case law that says acquiescence or knowledge converts a personal risk into one of employment. And I would actually ask that we return to Dodson because Dodson stands for that proposition. Acquiescence or knowledge of an action this court held did not convert the personal risk of the claimant who left a sidewalk to go down a grassy slope, argued that many employees did the same thing, and the employer knew that this actions were happening. And it said the contention that that knowledge converted the personal risk to one of employment is, and I quote, we find this contention without merit. So I don't believe the knowledge or acquiescence changes any outcomes. I also don't believe that there's an affirmative duty of Ford or any other employer to police the unsafe and personal acts of its employees. There's this great line in Dodson which I think is built upon Hatfield that says that's like the tail wagging the dog. The proposition that I think is put forward, if we accept it, would mean that Ford would have to make this gravel pathway with its four exit points, which deposit the pedestrians into a line of parked cars, and then beyond that is vehicular traffic. They would have to make that path safe for its own, for its employees, despite having already created the cement sidewalk, which has, at the end of it, tiger striping. It has guardrails. It has handrails where there are elevation changes with stairs. The tail does not wag the dog. There is no affirmative duty to police the unsafe and personal choices of its employees. What about if the employer is aware that several of its employees are using this path? I think that's knowledge, and I think the knowledge or acquiescence brings us right back to what we argue Dodson finds without merit. Just because they know does not mean that those personal choices become risks of employment. It is our people made for their own personal convenience over time. It's a series of personal conveniences sought by individuals. That doesn't mean this is now the risk of employment because there has been a cement sidewalk which had no obstructions, no barriers, and was designed specifically as a walking working surface by Ford for its use. Because of that, I can't reasonably believe that one could encounter the gravel pathway and the cement sidewalk and conclude that they are equally viable options. The gravel pathway was winding. It had areas which jutted out from it. The cement sidewalk was straight. It had edges which were well-defined and connected from Torrance Avenue to the parking lot. The gravel sidewalk had multiple exit paths which deposited the user into a row of parked cars and then vehicular traffic. The sidewalk deposited users into a striped area with guardrails that navigated them safely through each parking row in the lot. The gravel pathway was uneven. Mr. Rodriguez testified that there were variations in height and slope. The cement sidewalk where it traversed elevation changes had sidewalks with handrails. The gravel sidewalk had variations in rock sizes, dirt, and trash. The cement sidewalk was cement, level, and even. So the only way you could say these are equally viable paths is if you're motivated by personal convenience, which brings us back to Dodson and its progeny. And finally, I think I didn't hear it specifically today, but I believe it's been briefed. The nature of the risk doesn't matter either. A ditch, a chain fence, a grassy slope, and a worn-down gravel path all present a risk of injury. It's why that risk is encountered that matters. I'm again returning to the precedent of Dodson and its progeny, and I believe that the conclusion must be here that Mr. Rodriguez's accident did not arise out of his employment. We're asking that this court affirm. Thank you. Any questions from the court? No? Okay. Council Kent, you may reply. May I ask a question and then allow Council Kent to continue her argument? Sure. What's the benefit to the employer for the employees to use this gravel dirt road path? Sorry. I don't know if I can say there's a benefit to the employer, but I don't know if there's a benefit to the employer in Eagle where the employer was found liable because he knew that the employees played frisbee on their lunch break in the parking lot, and there was a defect. I think the standard is very clear, and I know Council is citing Dodson, Hatfield, and Purcell, and I think they're easily distinguishable. Dodson was running down a wet grassy slope. That's not the same thing. Ford and the commission have sort of characterized Rodriguez's act as an unusual singular event, but it's not. It was an act that hundreds of employees did every day. Are we to really say that Ford knew and didn't prevent it? They shouldn't be liable? They see this. They know it. They acquiesced. Ford had on its property multiple signs prohibiting every type of activity that its employees can't do. They are meticulous about their property. They're microscopic about what goes on on their property, and they permitted this. So they permitted it. They knew about it. There was a risk of harm, and we can't look at Rodriguez as a singular event, and I think, Your Honors, if you look at the whole holding of Orsini, I think it's ripe to flesh this out here in this opinion and to show why Rodriguez's injuries are compensable or at least do the full analysis of Orsini that I feel like not only did the commission not do, but even was truncated in those appellate court decisions. I would ask that it gets fleshed out, and most importantly, and I think it does no justice to my client, when the arbitrator wrote such a beautiful, succinct, accurate opinion that hit every single Supreme Court of that holding. The commission overturned it on false factual findings, and that, to me, is not fair. It's not just. If you're going to overturn a decision, then I think there has to be the responsibility of the commission to report the only accurate facts and make the analysis therefrom, and they didn't. Counsel, let me ask you this with that analysis of Orsini because it's prefaced with an employer's acquiescence cannot convert personal risk to employment risk. Understanding that, take me to the rest of the analysis. Okay, so Orsini did say that, but that's taken out of context. Orsini says it cannot, an acquiescence isn't enough if it is outside of an employment risk, and employment risk is defined by Orsini as defects on the property, and they are very specific to say, unlike their case in Mazursky and Fischer-Body, where there was a defect on the property, such as in Orsini, Scheffler, Eagle, Materials Service Corp., Arbiter Daniels, there is liability for the employer. So that is why this case, at least I'm asking you, your honors, to look at it through the entire umbrella of Orsini and not just one little piece because I think the Supreme Court in Orsini did this for a reason, because it has a line of cases like Mazursky and Fischer-Body, and it has this, which are also Supreme Court cases, and cases like Union and Scheffler, and they brought it into one large, beautiful opinion where we can look at that and say, where does this case fall? And the commission did not do that. The arbitrator did it. He hit every single point. There was knowledge, risk of premises, and the arbitrator says Forge should have never allowed ingress or egress over that gravel walkway. There is an affirmative duty. Union-Starch says there's an affirmative duty. Union-Starch says that they could have easily prevented, the employer could have easily prevented access to the roof if he had so wanted. Archer-Daniels, same thing. Scheffler, same thing. There's an affirmative duty. If they know about an activity that's going around all the time on their property, the employer has to prevent it. It seems though, it seems though, and I'm relatively familiar with the facts of these other cases, you know, with the, for instance, this is Dodson with the hill, looks like a grassy hill, but it turns out it's wet. There's a fall. This seems a little different where the condition is, to a reasonable person, it seems it would be relatively known that it was more dangerous than walking on the paved sidewalk that's put there for the purpose to direct traffic to the right spot for the employer to get them into the building. Whereas this is different elevation, rocks, flagstones, those things. Rodriguez said, everybody did it. I just did what everybody else did. And if you look at the video cameras, you see more employees in that one and a half minute use that gravel walkway. It's just, it's just true. They used it. And no one said they couldn't. And as Rodriguez said, why couldn't I? Everybody else did. And again, there was no sign, one sign. I think there could have been less employer liability, let alone offense. Well, let me go with your broad brush you just painted. I don't like the risk of premises language because I think we use defect and premises a lot. I apologize. No, I mean, it's, I'm not saying you're wrong, but I'm just saying it, I think a little more understood, readily understood. So you're saying that if on employer premises, there is a defect. And if the employer is aware that that defect is being, that employees are exposing themselves to the defect, which means awareness, right? So knowledge and awareness, then if your client fell, just, they don't do it anymore, but going out a door for a smoke break, and there was something defective in the employer's premises out there in the yard, then is that a compensable injury? I would say yes. There's a defect on the if the employer allows that activity, then yes, there is. Yeah. Is aware of allows it, right? Pardon? A knowledge. Okay. You're saying is essential. Knowledge is essential. Knowledge is essential. And that's why in some cases, like, for example, Purcell, employer didn't know that Purcell was going to hop a fence. In Hadfield, the ditch case, it is unclear whether the employer knew because citations were written, but they could have been written just after if they were written just after the employer didn't know if they're written before and after employer did an affirmative step to prevent the ditch from being used. I think the employer wasn't found liable, but that's a good case. Why? Because the employer didn't know there was horseplay going on with the hose that killed a young boy or young man, 17. So I think you have to have employer knowledge or acquiescence to the practice. The practice has to be customary and there has to be a defect on the press, the premises. May I ask one more question? Yes. How do you differentiate and accept the ruling of the court in Dobson? Because the facts are close. They are close. And I would have to say there was a dissent in that opinion, and I preferred the dissent. What I would say this is that had Dodson fully vetted the opinion of Orsini, I would have liked it better. But I would also say this, a wet, grassy slope is not the same thing as this five foot wide, hundred foot long path laden with gravel. It's just not. But again, there was a dissent. So I can't reconcile it completely. But I would say this, a wet, grassy slope is not the same thing as here. So it was easier for the appellate court to find that this was a risk of harm to the employee alone. And the only testimony was that the petitioner, in that case, the employee said that the employer know. Here, we have direct evidence of the videos that the employer know and that they watched the area for unauthorized activity. But clearly, they did not deem it so. They did nothing to prevent it. And they were scrupulous about preventing unauthorized activity, as all the signs show. I think the arbitrator got it perfect. And that opinion is perfect. Again, I only ask that this be overturned because the commission does not use the right facts for this case. As a basis for its decision. And I would ask that this be fully vetted under the principles of Orsini. Any questions from the court? Further questions? Time has expired. Okay, very good. Well, thank you, counsel, both for your fine arguments in this matter this morning. It will be a written disposition will be issued in this matter. And at this time, our clerk of our court will escort you from our remote courtroom. And happy holidays to both of you and best wishes. Thank you. Happy holidays.